# United States Court of Appeals for the Federal Circuit

---

**NIKE, INC.,**
*Appellant*

**v.**

**ADIDAS AG,**
*Appellee*

---

2019-1262

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00067.

---

Decided: April 9, 2020

---

MICHAEL JOSEPH HARRIS, Banner & Witcoff, Ltd., Chicago, IL, argued for appellant. Also represented by CHRISTOPHER J. RENK, KEVIN DAM.

MITCHELL G. STOCKWELL, Kilpatrick Townsend & Stockton LLP, Atlanta, GA, argued for appellee. Also represented by VAIBHAV P. KADABA, MICHAEL T. MORLOCK, TIFFANY L. WILLIAMS.

---

Before LOURIE, CHEN, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge*.

This case requires this court to once again consider the notice provisions of the Administrative Procedure Act. Nike, Inc. appeals the Patent Trial and Appeal Board's decision on remand denying its request to enter substitute claims 47–50 of U.S. Patent No. 7,347,011 on the ground that those claims are unpatentable under 35 U.S.C. § 103. Specifically, Nike asserts that the Board violated the notice provisions of the APA by finding that a limitation of substitute claim 49 was well-known in the art based on a prior art reference that, while in the record, was never cited by adidas AG ("Adidas") for disclosing that limitation. Nike also challenges the Board's finding that Nike's evidence of long-felt but unmet need was insufficient to establish the nonobviousness of substitute claims 47–50. We conclude that substantial evidence supports the Board's finding that Nike failed to establish a long-felt need for substitute claims 47–50. Because no notice was provided for the Board's theory of unpatentability for substitute claim 49, however, we vacate the Board's decision as to substitute claim 49 and remand for the Board to determine whether that claim is unpatentable as obvious after providing the parties with an opportunity to respond.

## BACKGROUND

This inter partes review proceeding returns from a prior appeal in which we affirmed-in-part and vacated-in-part the Board's decision denying Nike's motion to amend, and remanded for the Board to address certain errors underlying its conclusion that Nike's proposed substitute claims 47–50 were unpatentable for obviousness. *See generally Nike, Inc. v. Adidas AG*, 812 F.3d 1326 (Fed. Cir. 2016) (*Nike I*), *overruled on other grounds by Aqua Prods., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017) (en banc). Nike now appeals the Board's decision on remand, in which the Board once again denied Nike's motion to enter substitute claims 47–50.

I

The '011 patent discloses articles of footwear having a textile "upper," which is made from a knitted textile using any number of warp knitting or weft knitting processes. '011 patent col. 3 ll. 20–32. Weft knitting includes "flat knitting," where the textile is knit as a sheet or flat piece of textile. *Id.* at col. 7 ll. 5–8.

Substitute claims 47–50 generally relate to a unitary flat-knitted textile element. They recite:

47. An article of footwear comprising

an upper incorporating a flat knit textile element, the flat knit textile element

(1) having flat knit edges free of surrounding textile structure such that the flat knit edges are not surrounded by textile structure from which the textile element must be removed, some of the flat knit edges joined together to form an ankle opening in the upper for receiving a foot, the ankle opening having an edge comprised of one of the flat knit edges; and

(2) having a first area and a second area with a unitary construction, the first area being formed of a first stitch configuration, and the second area being formed of a second stitch configuration that is different from the first stitch configuration to impart varying properties to the textile element; and

a sole structure secured to the upper.

48. The article of footwear recited in claim 47, wherein at least one of the first stitch configuration and the second stitch configuration forms an aperture in the flat knit textile element and the joined edges shape the flat knit textile element to form a lateral region, a medial region, an instep region and a heel region of the upper.

49.   The article of footwear recited in claim 47, wherein at least one of the first stitch configuration and the second stitch configuration forms a *plurality of apertures* in the flat knit textile element, the *apertures formed by omitting stitches* in the flat knit textile element and positioned in the upper for receiving laces.

50.   The article of footwear recited in claim 47, wherein the flat knit textile element is one of an exterior layer, an intermediate layer, and an interior layer of the upper, and the joined edges shape the flat knit textile element to form a lateral region, a medial region, an instep region and a heel region of the upper.

Mot. to Amend at 1–2, *Adidas AG v. Nike, Inc.*, No. IPR2013-00067, 2013 WL 5592521 (P.T.A.B. Aug. 19, 2013) (alterations omitted) (emphases added).  Relevant to this appeal, substitute claim 49 recites a knit textile upper containing "apertures" that can be used to receive laces and that are "formed by omitting stitches" in the knit textile.

II

In its petition, Adidas challenged the patentability of claims 1–46 of the '011 patent.  After the Board granted Adidas's petition, Nike filed a motion to amend its patent pursuant to 35 U.S.C. § 316(d), requesting cancellation of claims 1–46 and entry of substitute claims 47–50.  In particular, Nike proposed to substitute claim 47 for original claim 16, substitute claims 48 and 49 for original claim 19, and substitute claim 50 for original claim 20.  Adidas opposed Nike's motion, arguing that substitute claims 47–50 are unpatentable under 35 U.S.C. § 103 in view of the combination of three prior art references: U.S. Patent No. 5,345,638 (Nishida); U.S. Patent No. 2,178,941 (Schuessler I); and U.S. Patent No. 2,150,730 (Schuessler II).  Adidas argued that Nishida disclosed substitute

claim 49's limitation that the apertures are "formed by omitting stitches."

In its final written decision, the Board granted Nike's request to cancel claims 1–46, but denied Nike's request for entry of substitute claims 47–50 on the ground that Nike failed to establish the patentability of those claims over the combined teachings of Nishida, Schuessler I, and Schuessler II. *See Adidas AG v. Nike, Inc.*, No. IPR2013-00067, 2014 WL 1713368, at \*20–21 (P.T.A.B. Apr. 28, 2014). After finding that Nike failed to show that it proposed a "reasonable number" of substitute claims for original claim 19, the Board "group[ed] claim 49 with claim 48, for patentability purposes," meaning that those claims would rise and fall together. *Id.* at \*12. The Board did not address Nike's long-felt need evidence or argument.

On appeal, we determined that substantial evidence supported the Board's finding that a person of ordinary skill in the art would have been motivated to combine Nishida, Schuessler I, and Schuessler II with a reasonable expectation of success in arriving at the unitary, flat-knitted textile upper recited in substitute claims 47–50. *See Nike I*, 812 F.3d at 1335–38. We also affirmed the Board's conclusion that Nike, the patent owner, bore the burden of proving the patentability of substitute claims 47–50 by a preponderance of the evidence. *Id.* at 1332–34.

We identified two errors in the Board's decision, however. First, the Board failed to determine how substitute claims 48 and 49 "should be treated per the standard set forth in" the Board's then-informative decision *Idle Free Systems, Inc. v. Bergstrom*, No. IPR2012-00027, 2013 WL 5947697 (P.T.A.B. June 11, 2013). *Nike I*, 812 F.3d at 1342. Second, the Board failed to examine Nike's long-felt need evidence. *Id.* at 1339–40.

In light of these two errors, we remanded for the Board to determine how substitute claims 48 and 49 should be treated under *Idle Free* and, "if necessary, a full

consideration of the patentability of each." *Id.* at 1342. We rejected Adidas's argument that we could affirm the Board's conclusion that substitute claim 49 was unpatentable as obvious because the Board's decision "lack[ed] critical fact-findings needed for any obviousness determination." *Id.* at 1343–45. In doing so, we explained that "Nishida's specification never specifically discusses the lacing holes of its upper; they are only shown in Figure 3," and that the Board neither "point[ed] to any disclosure in Nishida that explains the manner in which" the holes in Figure 3 were created, nor "address[ed] the presence of the holes in either claim 49 or Nishida." *Id.* at 1344. We then noted:

> It may well be that the Board intended to convey that claim 49 was obvious in light of Nishida because *skipping stitches to form apertures, even though not expressly disclosed in Nishida, was a well-known technique in the art* and that understanding perhaps would be a basis to conclude that one of skill in the art would utilize this technique to create holes for accepting shoe laces. But, the Board did not articulate these findings.

*Id.* at 1344–45 (footnote omitted) (emphasis added). We also remanded for the Board to examine Nike's long-felt need evidence "and its impact, if any, on the Board's analysis under the first three" factual considerations set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966). *Id.* at 1340.

On remand, neither party asked to submit additional briefing or new evidence to the Board. This court subsequently issued its en banc decision in *Aqua Products*, overruling *Nike I*'s holding that the patent owner bears the burden of persuasion with respect to the patentability of substitute claims presented in a motion to amend. *See Aqua Prods.*, 872 F.3d at 1296, 1324–25. The Board also de-designated *Idle Free* as "informative." The parties

thereafter submitted briefs to the Board addressing the impact of *Aqua Products* on the remand proceedings. Adidas did not assert any new prior art references to demonstrate the unpatentability of substitute claim 49 or otherwise revise its invalidity arguments on remand.

In its decision on remand, the Board concluded that Adidas proved by a preponderance of the evidence that substitute claims 47–50 are unpatentable as obvious. *Adidas AG v. Nike, Inc.*, No. IPR2013-00067, 2018 WL 4501969, at *2 (P.T.A.B. Sept. 18, 2018) (*Remand Decision*). The Board found that substitute claims 48 and 49 were proper substitutes for original claim 19 under *Idle Free. Id.* at *6.

The Board next determined that "the entirety of the record demonstrates the unpatentability of substitute claim 49 by a preponderance of the evidence." *Id.* at *7. The Board found that "Nishida does not disclose apertures 'formed by omitting stitches,' as recited in claim 49." *Id.* But the Board found that "another prior art document of record in the proceeding," a handbook by David J. Spencer, *Knitting Technology: A Comprehensive Handbook and Practical Guide* (3d ed. 2001) (Spencer), "demonstrates that skipping stitches to form apertures was a well-known technique." *Id.* (citing *Genzyme Therapeutic Prods. Ltd. v. Biomarin Pharm. Inc.*, 825 F.3d 1360, 1369 (Fed. Cir. 2016)); *see also id.* at *8 n.11 (identifying Spencer). The Board concluded that "[b]ecause the omission of stitches was a well-known technique in the field of knitting for forming . . . apertures," a skilled artisan "would have had reason to use such a known technique . . . to form the plurality of apertures taught by Nishida, as recited by substitute claim 49." *Id.* at *8 (first citing Spencer 57–58; then citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007); then citing J.A. 1248 ¶ 107).

Finally, the Board considered Nike's evidence and argument that the invention of substitute claims 47–50 solved the long-felt need to reduce material waste in the

manufacture of knit textile uppers, but determined that the prior art showed that the alleged need was already met by the date of the invention. *Id.* at \*10–12.

Nike appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

Obviousness is a question of law based on underlying facts. *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1373 (Fed. Cir. 2016) (citing *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000)). We review the Board's legal conclusion of obviousness de novo, and underlying factual findings for substantial evidence. *Id.* (citing *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1280 (Fed. Cir. 2015), *aff'd*, *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016)). These determinations of fact consist of: "(1) the 'level of ordinary skill in the pertinent art,' (2) the 'scope and content of the prior art,' (3) the 'differences between the prior art and the claims at issue,' and (4) 'secondary considerations' of non-obviousness such as 'commercial success, long-felt but unsolved needs, failure of others, etc.'" *Nike I*, 812 F.3d at 1334–35 (quoting *KSR*, 550 U.S. at 406). Whether the Board improperly relied on new arguments is reviewed de novo. *In re IPR Licensing, Inc.*, 942 F.3d 1363, 1369 (Fed. Cir. 2019) (citing *In re NuVasive, Inc.*, 841 F.3d 966, 970 (Fed. Cir. 2016)).

I

Nike asserts that the Board erred by relying on Spencer to find substitute claim 49's requirement of forming apertures "by omitting stitches" was a well-known technique. According to Nike, the Board violated the APA by failing to give notice that it would rely on Spencer to support its obviousness conclusion for substitute claim 49. We agree.

A

We addressed the universe of prior art that the Board should consider when reviewing a motion to amend in *Aqua Products*. There, we held that the Board may not "base its patentability determinations with respect to amended claims solely on the face of the motion to amend, without regard to the remainder of the IPR record." 872 F.3d at 1325. Rather, the Board "must consider the *entirety* of the record before it when assessing the patentability of amended claims." *Id.* at 1296 (emphasis added). We expressly declined to address, however, whether the Board "may sua sponte raise patentability challenges to a proposed amended claim" because the "record d[id] not present this precise question." *Id.* at 1325; *see also id.* at 1350 n.7 (Taranto, J., dissenting) ("It is at present unclear to what extent the Board may sua sponte introduce evidence or arguments into the record—and rely on them after giving notice and opportunity to be heard—even in adjudicating the patentability of issued claims, much less in assessing proposed substitute claims.").

This case presents part of the question posed but left undecided in *Aqua Products*. We hold today that the Board may sua sponte identify a patentability issue for a proposed substitute claim based on the prior art of record.[1] If the Board sua sponte identifies a patentability issue for a proposed substitute claim, however, it must provide notice of the issue and an opportunity for the parties to respond before issuing a final decision under 35 U.S.C. § 318(a).

---

[1]    We do not decide today whether the Board may look outside of the IPR record in determining the patentability of proposed substitute claims. This case does not present that precise question. Therefore, we reserve it for another day.

Because this case involves a motion to amend, we conclude that the Board should not be constrained to arguments and theories raised by the petitioner in its petition or opposition to the motion to amend. That principle—announced in *SAS Institute, Inc. v. ComplementSoft, LLC*, 825 F.3d 1341 (Fed. Cir. 2016), *Magnum Oil*, and other cases—does not apply in the context of motions to amend where the patent owner has introduced new claims into the proceedings. Otherwise, were a petitioner not to oppose a motion to amend, the Patent Office would be left with no ability to examine the new claims. *See Aqua Prods.*, 872 F.3d at 1311 ("[W]here the challenger ceases to participate in the IPR and the Board proceeds to final judgment, it is the Board that must justify any finding of unpatentability by reference to the evidence of record in the IPR." (discussing *Cuozzo*, 136 S. Ct. at 2144)). It makes little sense to limit the Board, in its role within the agency responsible for issuing patents, to the petitioner's arguments in this context. Rather, based on consideration of the entire record, the Board must determine whether the patent owner's newly-presented, narrower claims are "supported by the patent's written description" and "unpatentable in the face of the prior art cited in the IPR." *Id.* at 1314 (citing 35 U.S.C. § 316(d)(3)).

Here, Spencer was undisputedly part of the record in this IPR proceeding. As the Board correctly observed, Adidas included Spencer as an attachment to its petition and both parties' experts relied on Spencer's teachings in their declarations. *See Remand Decision*, 2018 WL 4501969, at *8 n.11.

Although the Board was permitted to raise a patentability theory based on Spencer, the notice provisions of the APA and our case law require that the Board provide notice of its intent to rely on Spencer and an opportunity for the parties to respond before issuing a final decision relying on Spencer. Under the APA, "[p]ersons entitled to notice of an agency hearing shall be timely informed of . . . the matters

of fact and law asserted," 5 U.S.C. § 554(b)(3), and the agency "shall give all interested parties opportunity for . . . the submission and consideration of facts [and] arguments," *id.* § 554(c)(1).  In interpreting the APA's notice provisions in the context of IPR proceedings, we have cautioned that "an agency may not change theories in midstream without giving respondents reasonable notice of the change and the opportunity to present argument under the new theory." *SAS*, 825 F.3d at 1351 (citation and quotation marks omitted), *rev'd on other grounds*, 138 S. Ct. 1348 (2018); *see also Genzyme*, 825 F.3d at 1366 ("The Patent and Trademark Office must provide the patent owner with timely notice of 'the matters of fact and law asserted,' and an opportunity to submit facts and argument." (first quoting 5 U.S.C. §§ 554(b)–(c), 557(c); then quoting *Dell Inc. v. Acceleron, LLC*, 818 F.3d 1293, 1301 (Fed. Cir. 2016))).

Our decisions have also set forth notice requirements relating to the parties' arguments.  For instance, the Board "must base its decision on arguments that were advanced by a party, and to which the opposing party was given a chance to respond." *Magnum Oil*, 829 F.3d at 1381 (citing *SAS*, 825 F.3d at 1351).  In *Magnum Oil*, we reversed the Board's decision holding all challenged claims unpatentable for obviousness. *Id.*  The Board had concluded that the challenged claims would have been obvious in view of a prior art combination that was different from the combination asserted in the IPR petition. *Id.* at 1377.  Since the petitioner provided only conclusory arguments as to a motivation to combine the references underlying the Board's obviousness conclusion, we determined that the Board did not have sufficient evidence on which to base its conclusion. *Id.* at 1380.  We rejected the argument that "the Board is free to adopt arguments on behalf of petitioners that could have been, but were not, raised by the petitioner during an IPR." *Id.* at 1381.

Similarly, in *SAS*, we concluded that the Board erred by changing its construction of a disputed claim term in its

final written decision without affording the parties an opportunity to respond. 825 F.3d at 1350–52. We noted that it was "difficult to imagine either party anticipating that already-interpreted terms were actually moving targets, and it [wa]s thus unreasonable to expect that they would have briefed or argued, in the alternative, hypothetical constructions not asserted by their opponent." *Id.* at 1351. We vacated the Board's patentability determination of the disputed claim and remanded so that the parties could address the Board's new construction. *Id.* at 1352.

More recently, in *IPR Licensing*, we held that the Board violated the APA notice requirements by relying on a prior art reference that was not asserted in the only instituted ground. 942 F.3d at 1368–70. Neither the petition nor the patent owner's response mentioned the reference in discussing the only instituted ground, yet the Board cited the reference "several times on remand when analyzing why [the challenged claim] was unpatentable." *Id.* at 1369. In reversing the Board's decision, we explained that permitting the Board to "rely on evidence relating solely to grounds on which it never instituted" would "allow the Board's final written decision to rest on arguments that a patent owner has no ability to rebut or anticipate." *Id.* (citing *Magnum Oil*, 829 F.3d at 1381).

While none of *Magnum Oil*, *SAS*, or *IPR Licensing* was decided in the context of a motion to amend, we see no reason why their holdings and principles regarding fair notice and an opportunity to respond would not apply to all aspects of an IPR proceeding. We therefore adopt these holdings and principles to apply in the context of a motion to amend. Accordingly, we hold that it is appropriate for the Board to sua sponte raise unpatentability grounds based on the IPR record and not be limited to the unpatentability grounds asserted by the petitioner in its petition or opposition to the motion to amend, provided that the Board gives the parties notice and an opportunity to respond.

B

With these principles in mind, we conclude that the Board violated the APA's requirements of notice and an opportunity to respond when it relied on Spencer to find that the formation of apertures by skipping stitches was a well-known technique in the art.

Throughout the IPR proceeding, Adidas never argued that skipping stitches to form apertures was a well-known technique, let alone that Spencer taught this claim limitation. Although it is undisputed that Spencer is part of the IPR record, Adidas did not rely on Spencer in its asserted ground for unpatentability of substitute claim 49 in either its opposition to Nike's motion to amend or its briefing on remand. And although the parties' experts and Nike's counsel cited certain disclosures in Spencer for other reasons, those disclosures were entirely different from the disclosures on which the Board relied in finding that the formation of apertures by skipping stitches was well-known. *Compare Remand Decision*, 2018 WL 4501969, at *8–9 (citing Spencer 57–58, 91–92, 95), *with* J.A. 156–57 ¶ 7; J.A. 176 ¶ 39; J.A. 182 ¶ 56; J.A. 1218–19 ¶ 51; J.A. 1246–47 ¶ 105; J.A. 1609. By including this new theory for the first time in its decision on remand, the Board denied Nike notice of the issues that the Board would consider and an opportunity to address the factual and legal arguments on which the Board's patentability determination would rest. *See* 35 U.S.C. § 554(b)–(c).

Contrary to the Board's suggestion, our decision in *Genzyme* does not suggest a different outcome. In that case, we held that the Board did not violate the APA even though its final written decisions cited two references "that were not specifically included in the combinations of prior art on which the Board instituted review." 825 F.3d at 1366. The Board had relied on the prior art to show the state of the art at the time of the invention; it did not rely on the prior art to disclose a particular claim limitation for

purposes of anticipation or obviousness. *Id.* at 1365–66. We explained that the "introduction of new evidence in the course of the trial is to be expected in *inter partes* review trial proceedings," and that the Board at the institution phase "cannot predict all the legal or factual questions that the parties may raise during the litigation." *Id.* at 1366–67. With these considerations in mind, we concluded that the "Board may consider a prior art reference to show the state of the art at the time of the invention, regardless of whether that reference was cited in the Board's institution decision." *Id.* at 1369. But that does not relieve the Board of its notice obligations.

Indeed, in *Genzyme* we emphasized that the "critical question for compliance with the APA and due process" was whether the patent owner received "adequate notice of the issues that would be considered, and ultimately resolved, at the hearing." *Id.* at 1367 (citation omitted). Both parties in *Genzyme* "address[ed] the relevance of the [two] references" to the state of the art in their briefing and, thus, the patent owner "had ample notice that the references were in play as potentially relevant evidence and that the Board might well address the parties' arguments regarding those references in its final written decisions." *Id.* The patent owner had—and took advantage of—an opportunity to respond to the disputed references.

Here, by contrast, Nike had no notice that the Board might rely on Spencer to teach the limitations of substitute claim 49. Nor did it have notice of the specific portions of Spencer that the Board might rely on in its decision. The parties did not discuss or debate the relevant portions of Spencer during the IPR proceeding. The facts of *Genzyme* are further distinguishable on the ground that unlike Spencer, the two disputed references in *Genzyme* "were not among the prior art references that the Board relied upon to establish any claim limitations." *Id.* at 1369. Thus, the Board's decision here rests exclusively on an argument that the Board itself raised, addressed, and decided in its

decision on remand, thereby depriving Nike of "notice or an opportunity to be heard at a meaningful point in the proceedings." *Id.* at 1367.

As discussed above, the Board may rely on prior art of record in considering the patentability of amended claims. But in doing so, it must give the parties notice and an opportunity to respond. For example, prior to issuing its decision on remand, the Board in this case could have informed the parties that it intended to rely on Spencer for disclosing the disputed limitation of substitute claim 49, and requested supplemental briefing from the parties regarding its proposed ground for unpatentability. Alternatively, had the Board held an oral hearing on remand, it could have requested that the parties be prepared to discuss Spencer in connection with substitute claim 49 at the hearing. Either of these actions would satisfy the APA's notice requirements, but neither occurred in this case.

Accordingly, we vacate the Board's decision as to substitute claim 49 and remand for the Board to determine whether substitute claim 49 is unpatentable as obvious after providing the parties with an opportunity to respond.

II

Nike also challenges the Board's determination that its evidence of long-felt need was insufficient to establish the nonobviousness of substitute claims 47–50. After reviewing the record, we conclude that substantial evidence supports the Board's finding that Nike failed to establish a long-felt need.

In addressing the issue of motivation to combine the prior art references, we previously noted in *Nike I* that "there is no question that skilled artisans knew of the desire to reduce waste when producing wearable, knitted shoe uppers because that problem is expressly recognized in Nishida." 812 F.3d at 1338. We agreed with the Board that Nishida, Schuessler I, and Schuessler II "'serve the

same purpose' of efficiently creating knitted articles." *Id.* at 1337 (citation omitted). We also explained that

> a skilled artisan interested in Nishida's preference to minimize waste in the production process would have logically consulted the well-known practice of flat-knitting, which *eliminates the cutting process altogether*. In other words, a person of skill in the art would have been motivated to address the problem identified in Nishida by applying the teachings of the Schuessler References to arrive at the invention in Nike's proposed substitute claims.

*Id.* (emphasis added). Thus, this court has already determined that a skilled artisan would have adopted the flat-knitting techniques taught in the Schuessler references for the production of knitted shoe uppers in order to minimize waste.

Substantial evidence supports the Board's finding that other methods of minimizing waste—a problem undisputedly recognized by Nishida—had existed before the date of the invention. The Board found that Nishida "clearly teaches the benefits of reducing material waste, making the cutting waste a 'simple, lightweight and inexpensive material.'" *Remand Decision*, 2018 WL 4501969, at *10 (quoting Nishida col. 2 ll. 20–22). The Board noted that Nike's arguments and evidence on long-felt need focused solely on Nishida and its response to the problem in the art of making cutting waste less expensive, but ignored the teachings of other asserted prior art references. In particular, the Board cited Schuessler I's disclosure of a method of producing a knitted helmet on a flat knitting machine "in accordance with the disclosure in [Schuessler II]." *Id.* at *11 (quoting J.A. 997); *see also* Schuessler I col. 1 l. 48–col. 2 l. 2. The helmets of Schuessler I are "completed from the swatches as knitted *without requiring cutting*, and requiring the joining of only a few edges." Schuessler I col. 1 ll. 22–27 (emphasis added). Thus, the Board found that

"any alleged, long-felt need was met by the teachings of at least Schuessler I, namely, knitting textile elements 'without requiring cutting.'" *Remand Decision*, 2018 WL 4501969, at *12. This finding is supported by substantial evidence in the record.

Accordingly, we affirm the Board's determination that Nike's arguments and evidence failed to demonstrate a long-felt but unmet need for substitute claims 47–50.

## CONCLUSION

For the foregoing reasons, we vacate the Board's determination that substitute claim 49 is unpatentable for obviousness and remand for further proceedings. We affirm the Board's decision in all other respects.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**

## COSTS

No costs.